**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

MID ATLANTIC FRAMING, LLC,
on behalf of itself and all other similarly situated
beneficiaries of trust funds received, or to be
received by defendant Varish Construction, Inc.
Under Article 3-A of the New York Lien Law,

                            **Plaintiff,**

   vs.                                        3:13-CV-01376
                                                (MAD/DEP)

VARISH CONSTRUCTION, INC.; AVA REALTY
ITHACA, LLC; AVA DEVELOPMENT, LLC;
TOM VARISH, individually: AJESH PATEL, individually;
359 HOSPITALITY ASSOCIATES, LLC; SENECA
SUPPLY, LLC d/b/a THE DUKE COMPANY;
and "JOHN DOE NO. 1" through "JOHN DOE NO. 20",
inclusive, as those persons and entities having an interest in
real property located at 359 Elmira Road, Ithaca, New York,
and being designated as Tax Parcel Nos.: 128.-1-8 and
129.-1-9 on the Land and Tax Map of the City of Ithaca,
Tompkins County, New York, and a portion of Tax Parcel
Nos.: 129-1-10.2, 129.-1-1-1, 129.-1-6.2 and 129.-1-7.2 on the
Land and Tax Map of the City of Ithaca, Tompkins County,
New York, and/or the trust funds received, or to be received by
VARISH CONSTRUCTION, INC. for the improvement of
said property,

                            **Defendants.**
_____

**APPEARANCES:**                                  **OF COUNSEL:**

**MARCO & SITARAS, PLLC**               **GEORGE SITARAS, ESQ.**
33 Whitehall Street, 16th Floor
New York, New York 10004
Attorneys for Plaintiff

**CORWIN & CORWIN, LLP**                **CHARLES F. AHERN, ESQ.**
600 Unicorn Park
Woburn, Massachusetts 01801
Attorneys for Plaintiff

**COOPER ERVING & SAVAGE LLP**      **BRIAN W. MATULA, ESQ.**

| | |
|---|---|
| 39 North Pearl Street<br>Albany, New York 12207<br>Attorneys for Defendants AVA Realty<br>Ithaca, LLC, AVA Development LLC,<br>and Ajesh Patel | **DAVID C. ROWLEY, ESQ.** |
| **GREENBERG TRAURIG, LLP**<br>2700 Two Commerce Square<br>2001 Market Street<br>Philadelphia, Pennsylvania 19103<br>Attorneys for Defendant Wilmington<br>Savings Fund Society, FSB | **BRIAN T. FEENEY, ESQ.**<br>**GREGORY T. STURGES, ESQ.**<br>**STEPHEN M. BUHR, ESQ.** |

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff commenced this action on November 5, 2013, seeking damages in connection with a construction project in which Plaintiff performed work as a subcontractor of Varish Construction, Inc. (together with owner/principal, Tom Varish, collectively "Varish") on property owned at the time by AVA Realty Ithaca, LLC (together with AVA Development LLC and Ajesh Patel, collectively "AVA"); Varish and AVA are co-defendants in this action. *See* Dkt. No. 1. In a July 24, 2015 Memorandum-Decision and Order, the Court granted in part and denied in part AVA's motion for judgment on pleadings and granted Plaintiff's cross motion for leave to file a second amended verified complaint. *See* Dkt. No. 68.

On August 4, 2015, Plaintiff filed its second amended complaint. *See* Dkt. No. 69. In the second amended complaint, Plaintiff added Wilmington Savings Fund Society, FSB ("WSFS") as a Defendant in this action. *See id.* Currently before the Court is Defendant WSFS's motion to dismiss the claims asserted against it in the second amended complaint. *See* Dkt. No. 82.

### II. BACKGROUND

This action arises out of the construction of a Fairfield Inn & Suites hotel in Ithaca, New York (the "Project"). Defendant AVA was the owner of the Project. AVA hired Varish as its general contractor which, in turn, hired Mid Atlantic to construct the building frame and shell.

In 2012, Defendant Varish, as general contractor, entered into a contract with Defendants AVA and AVA Development, as owner, for the construction of the Fairfield Inn & Suites. *See* Dkt. No. 69 at ¶ 17. In furtherance of the Project, in September 2012, Varish hired Plaintiff Mid Atlantic pursuant to a written subcontract, wherein Mid Atlantic agreed to furnish and install certain framing and/or carpentry work at the Property for the agreed upon subcontract price of $721,000.00 (the "Subcontract"). *See id.* at ¶ 18. According to Mid Atlantic, during the course of the Project, Varish directed Mid Atlantic to perform extra work in the amount of $11,740.00, thereby adjusting the contract price upward to $732,740.00. *See id.* at ¶ 19. Mid Atlantic contends that it "duly performed its agreement with Varish and substantially completed all of the work required of it under the subcontract, including the extra work, no part of which has been paid except the sum of $115,000.00, thereby leaving a balance due and owing Mid Atlantic in the sum of $617,740.00." *Id.* at ¶ 20.

As relevant to the pending motion to dismiss, Plaintiff has named WSFS in three counts of the second amended complaint. *See* Dkt. No. 69 at ¶¶ 165-199. WSFS's role in the alleged events is as the construction lender, *i.e.*, it loaned the developer and owner of the property (AVA Realty) money to construct the hotel. In Count Sixteen, Mid Atlantic claims that WSFS is liable under section 7 of the New York Lien Law and attempts to void certain payments made by WSFS under the Agreement, alleging that WSFS violated section 7 by accepting false certifications from the general contractor that Mid Atlantic had been paid in full. *See* Dkt. No. 69 at ¶¶ 171-175. In Count Seventeen, Mid Atlantic asserts that WSFS mortgage lien over the property should be

3

subordinated to its alleged mechanic's lien because of an alleged material modification to the Agreement that was not recorded. *See id.* at ¶¶ 178-190. Finally, in Count Eighteen, Mid Atlantic claims that it is a third-party beneficiary to the Agreement and, therefore, is entitled to certain advances made by WSFS pursuant to Article 3-A of the New York Lien Law. *See id.* at ¶¶ 191-199.

Currently before the Court is Defendant WSFS's motion to dismiss the claims asserted against it in the second amended complaint. *See* Dkt. No. 82.

## III. DISCUSSION

### A. Standard of Review

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is

4

entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

**B.    Count Sixteen**

In Count Sixteen, Mid Atlantic claims that WSFS violated section 7 of the New York Lien Law by disbursing loan proceeds to AVA Realty after receiving allegedly false certifications from AVA Realty and the general contractor. *See* Dkt. No. 69 at ¶¶ 166-77. Defendant WSFS contends that Count Sixteen should be dismissed because section 7 of the Lien Law applies only to payments made by owners, contractors, or subcontractors, not to the disbursement of loan proceeds by lenders. *See* Dkt. No. 82-7 at 13-15. As such, WSFS contends that, because the second amended complaint "admits that WSFS was the lender and not an owner, contractor, or subcontractor, Mid Atlantic's § 7 claim must be dismissed." *Id.* at 14.

In response, Mid Atlantic argues that WSFS's motion to dismiss should be denied as to Count Sixteen because section 7 of the Lien Law is applicable "to the collusive conveyances, liens and encumbrances alleged by Plaintiff." Dkt. No. 91 at 23. Specifically, Mid Atlantic

5

contends that it "alleges in its complaint that WSFS advanced building loan proceeds to AVA based upon false certifications and documentation provided by the AVA Defendants and Varish, which purported to show that there was no money due and owing Mid Atlantic." *Id.* at 24 (citing Dkt. No. 69 at ¶ 172). Further, Mid Atlantic asserts that the second amended complaint "alleges that WSFS knew that the certifications were false, but turned a blind eye to the falsity in order to justify making further advances to the AVA Defendants." *Id.* (citing Dkt. No. 69 at ¶ 175). As such, Mid Atlantic argues that, "[b]y making those advances, WSFS effectively increased the amount of its mortgage lien or encumbrance on the property, to the detriment of lienors such as Mid Atlantic, whose interest in the property would be diminished as a result." *Id.*

> Section 7 of New York's Lien Law states as follows:
>
>> Any payment by the owner, contractor or subcontractor upon a contract for the improvement of real property, made prior to the time when, by the terms of the contract, such payment becomes due, for the purpose of avoiding the provisions of this article, shall be of no effect as against the lien of a subcontractor, laborer, or materialman under such contract, created before such payment actually becomes due. A conveyance, mortgage, lien or incumbrance made by an owner of real property, for the purpose of avoiding the provisions of this article, with the knowledge or privity of the person to whom the conveyance is made or in whose favor the mortgage, lien or incumbrance is created, shall be void and of no effect as against a claim on account of the improvement of such real property, existing at the time of the making of the conveyance or the creation of such mortgage, lien or incumbrance.

N.Y. Lien Law § 7.

As Defendant WSFS correctly argues, by its very terms, section 7 of the Lien Law applies only to owners, contractors and subcontractors. Nothing in this section indicates that it was intended to be applied to building loan contracts or lenders. In fact, the Lien Law defines the term "lender" as a party to a building loan contract that "in consideration of the express promise of an owner to make an improvement upon real property, agrees to make advances to or for the

6

account of such owner to be secured by a mortgage on such real property[.]" N.Y. Lien Law § 2(13). Further, the Lien Law definitions for "owner," "contractor," and "subcontractor" make clear section 7 is inapplicable to WSFS. *See* N.Y. Lien Law § 2(3), (9)-(10).

The Court also finds unpersuasive Mid Atlantic's argument that the second sentence of section 7 is applicable to the present situation. Again, the second sentence of section 7 does not mention lenders and does not, by its terms, authorize a claim by a subcontractor against a lender.

Moreover, beyond the question of whether section 7 creates a cause of action against lenders, the second sentence does not apply to the facts alleged in the second amended complaint. As set forth above, section 7 states that a "conveyance, mortgage, lien, or incumbrance" made "by an owner of real property" is void, if made for the purpose of avoiding a "claim on account of the improvement of such real property, *existing at the time of the making of the conveyance or the creation of such mortgage, lien or incumbrance.*" N.Y. Lien Law § 7 (emphasis added). In the second amended complaint, Mid Atlantic alleges that WSFS entered into the Agreement with AVA Realty on March 1, 2012, *see* Dkt. No. 69 at ¶ 187, and that the mortgage associated with the Agreement was recorded on March 7, 2012. *See id.* at ¶ 96. The general contractor on the project did not hire Mid Atlantic until September 2012, approximately six months after WSFS's mortgage was recorded. *See id.* at ¶ 18. Section 7 of the Lien Law makes clear that, to void a mortgage, it must have been created to avoid Mid Atlantic's "claim on account of the improvement of real property." N.Y. Lien Law § 7. Since the mortgage was created six months before Mid Atlantic was even hired to work on the Project, it was clearly not created "for the purpose of avoiding" Mid Atlantic's lien, because the lien could not have existed at that time. *See W.L. Development Corp. v. Trifort Realty, Inc.*, 406 N.Y.2d 489, 498-99 (1978); *Makhoul v. 115 96th Street Holding Corp.*, 263 A.D.2d 470 (2d Dept. 1999); *In re Elmwood Farms, Inc.*, 30 B.R.

7

282, 289 (Bankr. S.D.N.Y. 1983) ("[C]onstruction had not commenced until nine months after the recording of the mortgage, ruling out any possibility that a collusive mortgage had been granted").

Based on the foregoing, the Court grants WSFS's motion to dismiss as to Count Sixteen of the second amended complaint.

## C. Count Seventeen

In Count Seventeen, Mid Atlantic claims that WSFS's mortgage should be subordinated to Plaintiff's mechanic lien because material modifications were allegedly made to the Agreement, but those modifications were not recorded. *See* Dkt. No. 69 at ¶¶ 184-87. WSFS contends that Count Seventeen must be dismissed for several reasons. First, WSFS argues that Mid Atlantic does not have a mechanic's lien because it was discharged by the filing of a bond; and, therefore, Mid Atlantic no longer has a lien to which WSFS's mortgage could be subordinated. *See* Dkt. No. 82-7 at 15-16. Second, WSFS contends that, "[e]ven if Mid Atlantic explained away its failure to plead the bond and the discharge of its lien, Count 17 still fails the *Twombly* standard." *Id.* at 17. Specifically, WSFS argues that Mid Atlantic alleges "upon information and belief" that the Agreement was "amended or modified" after it was filed. *See id.* (citing Dkt. No. 69 at ¶ 184). WSFS contends, however, that Mid Atlantic has not alleged facts "explaining the terms of the alleged modification or when the alleged modification was made." *Id.* Further, WSFS argues that, even though Mid Atlantic does not plead facts describing the nature of the alleged amendment or modification, "it nonetheless claims (with no apparent basis) that the change was material (a legal requirement for subordination under the Lien Law)." *Id.* (citing Dkt. No. 69 at ¶ 184). "In short, Mid Atlantic asserts that the unidentified change made to the Agreement on an unidentified date was *not* filed within a certain timeframe. These vague allegations are the sort of

8

'threadbare recitals' of the elements of a cause of action that do not set forth a plausible claim for relief under *Iqbal* and *Twombly*." *Id.* Finally, WSFS argues that, even assuming that this claim otherwise satisfied *Twombly* and *Iqbal*, it is still legally insufficient under the Lien Law because the fact that WSFS may have waived unspecified requirements regarding "submissions" does not constitute a "modification" for purposes of section 22 of the Lien Law. *See id.* at 19-21.

In response, Mid Atlantic first contends that "WSFS' argument that Mid Atlantic's lien was discharged by bond must be rejected because the bond instrument that WSFS relies upon is not effective since it fails to comply with Section 19 of the Lien Law." Dkt. No. 91 at 10. Specifically, Mid Atlantic contends that the "lien discharge bond attached to WSFS' papers is not effective because it was never served upon Mid Atlantic, and a certificate of qualification issued under Section 1111 of the Insurance Law was not filed with the bond." *Id.* at 11 (citing Sturges Decl., Exhibit "A"). Further, Mid Atlantic argues that, "in an email on October 23, 2015, counsel for AVA in this action, Brian Matula, Esq., asserted that the bond was funded with money that WSFS had set aside from the construction loan, but that 'the bond expired after a year and the bond was released with the funds being returned to Mr. Patel.'" *Id.* (quoting Sitaras Decl., Exhibit "11"). As such, Mid Atlantic contends that, according to AVA's counsel, there is no longer a bond and, "[w]hile AVA has failed to provide any documents to support the claims made in the October 23, 2015 email, the email is enough to raise doubts as to whether the bond is valid and enforceable." *Id.*

Next, Mid Atlantic argues that WSFS's motion as to Count Seventeen must be denied because "WSFS' records show that the expenses and net sum available that were disclosed in the Section 22 affidavit were changed during the project and no modification was filed." Dkt. No. 91 at 12. Further, Mid Atlantic contends that it "is well-established that any modification in the

9

information disclosed in a Lien Law Section 22 affidavit are material and must be filed in the County Clerk's office." *Id.* "Here, WSFS' internal records produced in response to Mid Atlantic's subpoena reveal that the parties modified the expenses and net sum available, and therefore, WSFS' mortgage must be subordinated to Mid Atlantic's mechanic's lien." *Id.* at 13.

Mid Atlantic next argues that it has sufficiently pled a claim under section 22 "because it alleges that WSFS and AVA Defendants made material modifications to, or waived the material terms of the building loan contract without filing a modification with [the] County Clerk's office." *Id.* at 16. "Specifically, Mid Atlantic alleges that 'WSFS disbursed loan proceeds to AVA without requiring, or waiving the requirements that AVA provide certain certifications and submissions that AVA was required to submit to WSFS as a condition precedent to the disbursement of loan proceeds,' and that '[s]aid modifications and amendments have impaired and prejudiced the rights of contractors and lienors such as Mid Atlantic that furnished improvements to the Property.'" *Id.* (quoting Sturges Decl., Exhibit "A" at ¶¶ 187-188).

Section 22 of the Lien Law provides, in relevant part, as follows:

> A building loan contract either with or without the sale of land, and
> any modification thereof, must be in writing and duly
> acknowledged, and must contain a true statement under oath,
> verified by the borrower, showing the consideration paid, or to be
> paid, for the loan described therein, and showing all other expenses,
> if any, incurred, or to be incurred in connection therewith, and the
> net sum available to the borrower for the improvement, and, on or
> before the date of recording the building loan mortgage made
> pursuant thereto, to be filed in the office of the clerk of the county
> in which any part of the land is situated, except that any subsequent
> modification of any such building loan contract so filed must be
> filed within ten days after the execution of any such modification. .
> . If not so filed the interest of each party to such contract in the real
> property affected thereby, is subject to the lien and claim of a
> person who shall thereafter file a notice of lien under this chapter.

N.Y. Lien Law § 22. "Although section 22 states that 'any subsequent modification' . . . to a building loan contract must be filed, this language . . . has always been interpreted to mean any 'material' subsequent modification." *Altshuler Shahm Provident Funds, Ltd. v. GML Tower, LLC*, 21 N.Y.3d 352, 365 n.9 (2013) (quotation and emphasis omitted). A "'modification of a building loan contract is "material" if it (1) alters the rights and liabilities otherwise existing between the parties to the agreement or (2) enlarges, restricts or impairs the rights of any third-party beneficiary.'" *Id.* (quotation and other citation omitted); *see also Howard Sav. Bank v. Lefcon Partnership*, 209 A.D.2d 473, 475 (2d Dept. 1994).

"Amendments to the agreement 'must be filed within ten days after the execution of any such modification.'" *Howard Sav. Bank*, 209 A.D.2d at 475. "Noncompliance with the disclosure mandate of Lien Law § 22 results in the subordination of the Bank's mortgage to the liens subsequently filed by those who provided services and materials in connection with the project." *Id.* (citation omitted). The underlying purpose of Lien Law § 22 is to permit contractors and subcontractors to ascertain how much money will be made available to the owner in connection with the project and thus, the ability of the owner to pay for any services and materials provided. *See id.* (citation omitted).

In the present matter, the relevant portions of Count Seventeen of the second amended complaint provide as follows:

> 184. Upon information and belief, AVA and WSFS subsequently amended or modified the material terms of the Building Loan Contract after it was filed.
>
> 185. Upon information and belief, AVA and WSFS failed to file one or more modifications or amendments to the Building Loan Contract in the office of the Tompkins County Clerk within ten (10) days of such modification or amendment.

186. In addition, upon information and belief, WSFS and AVA agreed to material modifications and amendments to the terms and conditions of the Building Loan Contract which were never filed in County Clerk's office.

187. Upon information and belief, WSFS disbursed loan proceeds to AVA without requiring, or waiving the requirement that AVA provide certain certifications and submissions that AVA was required to submit to WSFS as a condition precedent to the disbursement of loan proceeds.

188. Said modifications and amendments have impaired and prejudiced the rights of contractors and lienors such as Mid Atlantic that furnished improvements to the Property.

189. By reason of AVA's and WSFS' failure to properly file modifications or amendments of the Building Loan Contract pursuant to Sections 13 and 22 of the N.Y. Lien Law, the Building Loan Mortgage is subordinate to the Lien and all subsequently filed mechanic's liens.

Dkt. No. 69 at ¶¶ 184-89.

In the second amended complaint, Mid Atlantic fails to allege any facts explaining the terms of the alleged modification or when it was made. Although Mid Atlantic fails to plead facts describing the nature of the alleged amendment or modification, it nonetheless claims that the change was material. *See* Dkt. No. 69 at ¶ 184. Mid Atlantic continues by contending that this unspecified material change to the Agreement, was not filed with Tompkins County within ten (10) days of the change. *See id.* at ¶ 185. These allegations in the amended complaint are merely a formulaic recitation of the elements of a claim brought pursuant to section 22 of the New York Lien Law. These allegations are devoid of factual enhancements that are necessary to render the claim plausible.[1] *See Iqbal*, 556 U.S. at 678.

---

[1] As WSFS notes, Mid Atlantic provided a number of additional facts in its response to the motion to dismiss that do not appear in the second amended complaint. *See* Dkt. No. 91. These allegations are not properly considered by the Court in deciding WSFS's motion to dismiss. Further, the Court takes no position whether these additional facts, if properly before the Court,

(continued...)

12

As WSFS correctly contends, Mid Atlantic has failed to articulate how the alleged unspecified modification(s) impaired the rights of subcontractors such as Mid Atlantic. Mid Atlantic fails to reference any specific section of the Building Loan Contract, and it fails to explain how WSFS and AVA Realty, in practice, allegedly deviated from the Agreement's specific provisions.

Based on the foregoing, the Court grants WSFS's motion to dismiss as to Count Seventeen.[2]

**D.    Count Eighteen**

In Count Eighteen of the second amended complaint, Mid Atlantic contends that it is a third-party beneficiary to the Agreement and, therefore, is entitled to enforce the terms of the Agreement against WSFS. *See* Dkt. No. 69 at ¶¶ 191-99. WSFS argues that this claim must be dismissed because Mid Atlantic is not a third-party beneficiary to the Agreement. *See* Dkt. No. 82-7 at 23-24.

The Agreement contains the following provision regarding third-party beneficiary claims:

---

[1](...continued)
would plausibly allege a claim under section 22 of the Lien Law.

[2] In response to WSFS's motion, Mid Atlantic claims that WSFS improperly argues that it had the information necessary to plead this cause of action with specificity because WSFS had produced nearly 6,000 pages of documents in response to Mid Atlantic's subpoena. *See* Dkt. No. 91 at 20. Mid Atlantic claims that the documents were not produced until after it had already filed its proposed second amended complaint. *See id.* As such, without citation to any relevant authority, Mid Atlantic contends that WSFS "misapplies the law since there is no requirement that Mid Atlantic plea[d] a Section 22 violation with specificity." *Id.*

Contrary to Mid Atlantic's contentions, it was required to plead this claim with sufficiently factual specificity to satisfy *Iqbal* and *Twombly*. Further, even assuming that WSFS did not turn over the documents responsive to the subpoena until after it filed its proposed second amended complaint, nothing prevented Mid Atlantic from cross-moving for leave to amend in response to the pending motion to dismiss. Rather, Mid Atlantic provided facts from the subpoenaed documents in its memorandum of law in response to the motion to dismiss, which the Court is not permitted to consider at this stage.

> Rights of Third Parties. The parties do not intend the benefits of this Agreement, the Note or the Mortgage to be for the benefit of any third party … [T]his Agreement shall not be construed as creating any rights, claims or causes of action against Lender by Borrower [] in favor of any contractor, subcontractor, supplier of labor or materials, or any of its respective creditors or any other person or entity other than Borrower. Without limiting the generality of the foregoing, advances made directly to any other contractor, subcontractor or supplier of labor or materials, shall not be deemed a recognition by Lender of a third-party beneficiary status of any such person or entity.

Dkt. No. 82-4 at 27-28.[3]

In the present matter, the Court first notes that Mid Atlantic failed to respond to WSFS's motion to dismiss as to this claim. As such, the Court finds that Mid Atlantic has abandoned this claim. *See Silverman v. Household Fin. Realty Corp. of New York*, 979 F. Supp. 2d 313, 317 (E.D.N.Y. 2013) (dismissing eleven out of fifteen causes of action due to the plaintiff's failure to oppose the defendants' arguments); *Reid v. Ingerman Smith LLP*, 876 F. Supp. 2d 176, 186 (E.D.N.Y. 2012) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed") (quoting *Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637, 643 (S.D.N.Y. 2008)); *Jackson v. Federal Exp.*, 766 F.3d 189, 196 (2d Cir. 2014) (holding that the district court may properly consider a claim abandoned whether the counseled party responded to some claims in response to the pending motion).

Even if the Court were to find that Mid Atlantic did not abandon Count Eighteen, the Court would nevertheless find that the claim should be dismissed. As the above language makes clear, the contracting parties did not intend to create any rights for third-party beneficiaries, which is necessary under Delaware law. *See Ins. Co. of North America v. Waterhouse*, 424 A.2d 675,

---

[3] Delaware law governs the "interpretation, construction, enforcement, and all other aspects of the rights, obligations and duties created under [the] Agreement." Dkt. No. 82-4 at 28.

679 (Del. Super. Ct. 1980); *Am. Fin. Corp. v. Computer Sciences Corp.*, 558 F. Supp. 1182, 1185 (D. Del. 1983) (holding "that under Delaware law both parties must in some manner express an intent to benefit the third-party before third-party beneficiary status is found") (citations omitted). Even if Court applied New York law, the result would be the same. *See Hylte Bruks Aktiebolag v. Babcock & Wilcox Co.*, 399 F.2d 289, 292 (2d Cir. 1968) (applying New York law).

Based on the foregoing, the Court grants WSFS's motion to dismiss as to Count Eighteen of the second amended complaint.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the foregoing reasons, the Court hereby

**ORDERS** that Defendant WSFS's motion to dismiss is **GRANTED;** and the Court further

**ORDERS** that the Clerk of the Court is directed to terminate WSFS as a Defendant in this action; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: September 14, 2016
      Albany, New York

Mae A. D'Agostino
U.S. District Judge