**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**MID ATLANTIC FRAMING, LLC,**
**on behalf of itself and all other similarly situated**
**beneficiaries of trust funds received, or to be**
**received by defendant Varish Construction, Inc.**
**Under Article 3-A of the New York Lien Law,**

**Plaintiff,**

**vs.**                                                                    **3:13-CV-01376**
                                                                         **(MAD/DEP)**


**AVA REALTY ITHACA, LLC; AVA DEVELOPMENT,**
**LLC; TOM VARISH,** _individually_**; AJESH PATEL,**
_individually_**; 359 HOSPITALITY ASSOCIATES, LLC;**
**and "JOHN DOE NO. 1" through "JOHN DOE NO. 20",**
_inclusive, as those persons and entities having an interest in_
_real property located at 359 Elmira Road, Ithaca, New York,_
_and being designated as Tax Parcel Nos.: 128.-1-8 and_
_129.-1-9 on the Land and Tax Map of the City of Ithaca,_
_Tompkins County, New York, and a portion of Tax Parcel_
_Nos.: 129-1-10.2, 129.-1-1-1, 129.-1-6.2 and 129.-1-7.2 on the_
_Land and Tax Map of the City of Ithaca, Tompkins County,_
_New York, and/or the trust funds received, or to be received by_
_VARISH CONSTRUCTION, INC. for the improvement of_
_said property_**,**

**Defendants.**
_____

**APPEARANCES:**                              **OF COUNSEL:**

**MARCO & SITARAS, PLLC**              **GEORGE SITARAS, ESQ.**
200 Liberty Street, 27th Floor              **PUJA SHARMA, ESQ.**
New York, New York 10218
Attorneys for Plaintiff

**CORWIN & CORWIN, LLP**              **CHARLES F. AHERN, ESQ.**
600 Unicorn Park
Woburn, Massachusetts 01801

Attorneys for Plaintiff

**COOPER ERVING & SAVAGE, LLP**      **CARLO ALEXANDRE C. de OLIVEIRA, ESQ.**
39 North Pearl Street                **DAVID C. ROWLEY, ESQ.**
4th Floor
Albany, New York 12207
Attorneys for Defendants AVA Realty
Ithaca, LLC, AVA Development, LLC,
and Ajesh Patel

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I.  INTRODUCTION

Plaintiff commenced this action on November 5, 2013, seeking damages in connection

with a construction project in which Plaintiff performed work as a subcontractor of Varish

Construction, Inc. (together with owner/principal, Tom Varish) on property owned at the time

by AVA Realty Ithaca, LLC (together with AVA Development LLC and Ajesh Patel,

collectively "AVA"). *See* Dkt. No. 1.  In a July 24, 2015 Memorandum-Decision and Order, the

Court granted in part and denied in part AVA's motion for judgment on pleadings and granted

Plaintiff's cross motion for leave to file a second amended verified complaint. *See* Dkt. No. 68.

On August 4, 2015, Plaintiff filed its second amended complaint. *See* Dkt. No. 69.  In

the second amended complaint, Plaintiff added Wilmington Savings Fund Society, FSB

("WSFS") as a Defendant in this action. *See id.*  Currently before the Court is Defendant

WSFS's motion to dismiss the claims asserted against it in the second amended complaint. *See*

Dkt. No. 82.

Thereafter, Plaintiff sought leave to file a third amended complaint. *See* Dkt. No. 115.

On December 7, 2016, Magistrate Judge Peebles heard oral argument in connection with the

motion. *See* Dkt. No. 129. At the close of argument, Magistrate Judge Peebles issued an oral

decision denying Plaintiff's motion to amend and to join a party. *See id.*; *see also* Dkt. No. 128.

Thereafter, on September 11, 2017, the Court affirmed Magistrate Judge Peebles' order and

further granted Plaintiff's motions for default judgment against Defendants Tom Varish and 359

Hospitality. *See* Dkt. No. 151.

Currently before the Court are the following motions: (1) Defendants AVA Realty

Ithaca, LLC, AVA Development, LLC and Ajesh Patel's motion for summary judgment (Dkt.

No. 140); (2) Plaintiff's motion for summary judgment (Dkt. No. 141); and (3) Plaintiff's motion

to strike the declaration of Tom Varish (Dkt. Nos. 159 & 160).

## II. BACKGROUND

### A.    The Parties

Defendant AVA Realty Ithaca, LLC, is a foreign limited liability company organized and

existing under the laws of the State of Pennsylvania. *See* Dkt. No. 140-53 at ¶ 1. AVA Realty

Ithaca was the owner of the property that is the subject of this case at the time Plaintiff's Notice

of Mechanic's Lien was filed. *See id.* Defendant AVA Development, LLC, is a limited liability

company organized and existing under the laws of the State of New Jersey. *See id.* at ¶ 2.

Defendant 359 Hospitality Associates, LLC, is a domestic limited liability company and the

owner of the property located at 359 Elmira Road, Ithaca, New York. *See id.* at ¶ 4. Defendant

Ajesh Patel is a member of AVA Realty Ithaca, LLC, AVA Development, LLC, and 359

Hospitality Associates. *See id.* at ¶ 3.[1] Defendant Varish Contractors International, Inc. ("VCI")

---

[1] Defendants AVA Realty Ithaca, LLC, AVA Development, LLC, and Ajesh Patel will be referred to collectively as the "AVA Defendants."

eventually became the general contractor in a contract entered into with Defendant AVA Realty Ithaca, LLC (the "Prime Contract"), for the construction of a Fairfield Inn & Suites Hotel at 359 Elmira Road, Ithaca, New York (the "Property"). *See id.* at ¶ 5.

**B.    The Building Loan**

On March 1, 2012, AVA Realty Ithaca, LLC and Wilmington Savings Fund Society ("WSFS") entered into a construction loan agreement (the "CLA") for the construction of the Fairfield Inn & Suites. *See* Dkt. No. 141-47 at ¶ 1. Under the CLA, WSFS agreed to loan AVA Realty the principal sum of $6,725,000. *See id.* at ¶ 2. The CLA was evidenced by a promissory note in the principal amount of $6,725,000, and secured by a building loan mortgage on the Property. *See id.* at ¶ 3. Defendant AVA Realty was the fee owner of the Property pursuant to a deed dated December 29, 2011. *See id.* at ¶ 4.

**C.    The Prime Contract**

On March 1, 2012, AVA Realty, as owner, entered into a prime contract with its affiliate, AVA Development, as "Contractor," for the construction of the project for the sum of $5,200,000 (the "AVA Development Contract"). *See* Dkt. No. 141-47 at ¶ 8. Since Defendant Patel is the owner and operator of both AVA Development and AVA Realty, he executed the AVA Development Contract on behalf of both entities. *See id.* at ¶ 9.

AVA Realty entered into a contract with VCI dated May 12, 2012, wherein VCI, as general contractor, agreed to build the hotel project for AVA Realty for the lump sum price of $5,700,000. *See id.* at ¶ 12. The VCI Contract included "General Conditions of the Contract for Construction, AIA Form A201-2007" (the "General Conditions"). *See id.* at ¶ 13. Under Article

3 of the VCI Contract, the dates for the commencement and completion of work were left blank. *See id.* at ¶ 14.

## D.    The Mid Atlantic Subcontract

On September 24, 2012, VCI entered into a subcontract with Mid Atlantic where Mid Atlantic agreed to provide labor and materials for the construction of the building shell and framing work for the price of $721,000.00 (the "Mid Atlantic Subcontract"). *See* Dkt. No. 141-47 at ¶ 15. Mid Atlantic submitted six payment applications to VCI totaling $732,740.00, which included the original contract amount of $721,000.00, plus change orders for additional work in the amount of $11,740.00. *See id.* at ¶ 16.

According to Mid Atlantic, as of its fourth payment application, which covered work through January 31, 2013, Mid Atlantic had completed 99% of its subcontract work. *See id.* at ¶ 17. The AVA Defendants, however, contend that substantially less than 99% of Mid Atlantic's work was completed as of January 31, 2013. *See* Dkt. No. 147 at ¶ 17. Moreover, Mid Atlantic contends that it received only one payment from VCI in the amount of $115,000, pursuant to VCI Check # 3277 dated December 26, 2012. *See* Dkt. No. 141-47 at ¶ 18. The AVA Defendants disagree, and contend that, "[a]s of February 8, 201[3], Plaintiff certified that it had been paid $421,480.00." Dkt. No. 147 at ¶ 18.

On February 13, 2013, Mid Atlantic's attorney, Charles Ahern, Esq., sent a letter to Varish, with copies sent to the AVA Defendants and WSFS, demanding payment in the sum of $600,960.00, and warning that if Mid Atlantic is not paid by Friday, February 22, 2013, Mid Atlantic will stop work and demobilize. *See* Dkt. No. 141-47 at ¶ 19. Mid Atlantic left the

project on March 1, 2013. On March 28, 2013, Mid Atlantic filed a Notice of Mechanic's Lien on the Property in the amount of $600,960.00. *See id.* at ¶ 23.

At some point in either late February or early March, the certain aspects of the work completed on the building failed an inspection by the City of Ithaca Building Inspector. *See* Dkt. No. 140-53 at ¶¶ 15-16; Dkt. No. 148 at ¶¶ 15-16. Although the parties dispute the amount of the deficiencies attributable to Mid Atlantic, at least some of the deficiencies were related to work within the scope of Mid Atlantic's subcontract. *See id.* The AVA Defendants contend that the deficiencies in Mid Atlantic's work needed to be remedied before any other work on the Project could proceed. *See* Dkt. No. 140-53 at ¶¶ 19-20. Mid Atlantic, however, contends that the only work left to be completed in order to remedy the deficiencies were "punch list" items, the value of which was $2,440.00. *See* Dkt. No. 148 at ¶¶ 19-20, 22.

**E.    The AVA Defendants Agreed to Make Direct Payments to VCI's Subcontractors**

On February 12, 2013, VCI and Ajesh Patel, as owner of AVA Realty, signed a letter amending the terms of their May 12, 2012 Contract (the "Amendment Letter"). *See* Dkt. No. 140-26 at 4. The Amendment Letter provides in pertinent part as follows:

> This letter will confirm you are hereby requesting the Owner to make certain payments directly to sub-contractors that have performed work on the Project under either a contract or agreement to which Contractor is a party. Any payments made shall only be on behalf of Contractor and shall not be an assumption of any responsibility for future payments nor shall it be an assumption of any other duties or obligations of the Contractor under the Agreement. Attached exhibit A lists the payments to be made and to whom.
>
> Owner shall have the right to deduct the sum of payments made from any pending or future AIA draw request made by Contractor.

Dkt. No. 140-26 at 4. Although the Amendment Letter indicates that it includes an "exhibit A" listing the payment to be made and to whom, "exhibit A" was never produced in discovery in this action. *See* Dkt. No. 141-47 at ¶ 44.

In a different version of this letter that was signed by Varish but not by Patel, reference is made to an "Exhibit B," which was the revised schedule of values relating to the work on the Project. *See* Dkt. No. 141-23 at 2. Again, this revised schedule of values in "Exhibit B" was not produced during discovery. *See* Dkt. No. 141-47 at ¶ 45. Moreover, the AVA Defendants did not produce the February 12, 2013 email and this version of the Amendment Letter that was attached to it during discovery. *See id.* at ¶ 46. Rather, the copy of the February 12, 2013 email attaching the incomplete version of the Amendment Letter were produced by WSFS in response to a subpoena issued by Mid Atlantic. *See id.* at ¶ 47.

WSFS hired ConTech Services, Inc. ("ConTech"), an independent inspection company, to perform periodic inspections of the Project. *See* Dkt. No. 141-47 at ¶ 50. ConTech's president, Herb Grant, performed site visits and submitted "Construction Monitoring Reports" to WSFS to report his observations following each inspection. *See id.* at ¶ 51. ConTech's Construction Monitoring Report from the February 28, 2013 site inspection noted the following: "1. The project owner/borrower has taken over the project management and invoicing for the project. Varish Construction will remain on site to project management [sic] of the construction trades. 2. All subcontractors are being paid by the owner" and that "[i]t is our understanding that the interim project superintendant(s) [sic] is Kevin Varish and Tom Varish." Dkt. No. 141-29 at 355. Herb Grant testified at his deposition that the notation that "project owner/borrower has taken over project management and invoicing" meant that VCI would no longer submit invoices as it had done previously, and invoicing would be through the owner so that "[t]he

owner now became the person responsible to pay people." Dkt. No. 141-47 at ¶ 53 (quoting Dkt. No. 141-28 at 39). ConTech's report from the April 2, 2013 site inspection again noted that "[a]ll subcontractors are being paid by the owner." Dkt. No. 141-47 at ¶ 54.

WSFS generated "Review Checklist and Approval Sheets" ("Draw Approval Sheet") for each draw request under the building loan. *See id.* at ¶ 55. WSFS's March 5, 2013 Draw Approval Sheet noted that "[b]orrower will become the project manager. The borrower will pay all sub-contractors directly." *Id.* at ¶ 56 (emphasis omitted). WSFS's Draw Approval Sheet signed on April 5, 2013 noted that "[a]s of the last draw AJ Patel has taken over as the project manager, all invoices and payment requests will not come through him . . . and payments are come [sic] directly out of his operating account." *Id.* at ¶ 57. WSFS's Draw Approval Sheets dated May 29, 2013, June 19, 2013, and July 1, 2013, each contained a similar notation referencing the fact that AJ Patel is now managing the funding for the Project. *See id.* at ¶ 58.

## F.    AVA Defendants' Maintenance of Trust Records

Ajesh Patel did not maintain a ledger or accounting records showing the receipt or disbursements of funds advanced to the AVA Defendants under the building loan. *See* Dkt. No. 141-47 at ¶ 60. When asked, "[d]id you maintain a separate ledger or accounting every time you received a building loan proceed to show how that particular advance was disbursed?", Patel answered "No." *Id.* at ¶ 61. In Pay Application 7R, Line Items 6 and 30 represented work done by Mid Atlantic and amounted to $225,000. *See* Dkt. No. 141-7 at 62-63. Patel testified that the $225,000 that AVA Realty received for Line Items 6 and 30 in Pay App. 7R was paid to "various subcontractors." *Id.*; *see also* Dkt. No. 141-47 at ¶ 62.[2]

_____

[2] The Court notes that the AVA Defendants deny this assertion by pointing to his

<span style="float:right">(continued...)</span>

Request #6 in Mid Atlantic's Request for Production of Documents ("Request #6")

requested "[a]ll books, records and/or ledger of trust assets showing trust assets receivable, trust

assets payable, trust funds received, trust payments made with trust assets . . . as per Section 75

of the Lien Law." Dkt. No. 141-47 at ¶ 64. The AVA Defendants responded to Request #6 by

attaching partial copies of bank statements and copies of miscellaneous checks for the period

from September 2012 through February 2013. *See id.* at ¶ 65.[3] WSFS "Disbursement/Release

Summary Sheet" shows that through January 8, 2014, WSFS made 20 advances to AVA Realty

under the building loan totaling $6,096,981.52. *See id.* at ¶ 66. The copies of checks annexed

to the AVA Defendants' response to Request #6 total $1,040,208.25. *See id.* at ¶ 67.

Patel is the only employee of the AVA Defendants. *See id.* at ¶ 70. Patel prepared all

checks and payments on behalf of AVA Realty and AVA Development in relation to the Project.

*See id.* at ¶ 71. Patel is the only authorized signatory on AVA Realty's and AVA Development's

bank accounts at WSFS. *See id.* at ¶ 72.

## G.    Mid Atlantic's Mechanic's Lien

On March 28, 2013, Mid Atlantic filed a Notice of Mechanic's Lien with proof of service

in the Tompkins County Clerk's Office. *See* Dkt. No. 141-47 at ¶ 76. On March 20, 2014,

Defendant AVA Realty, as owner, and Aegis Security Insurance Company, as surety, duly filed

---

[2](...continued)
deposition testimony in which he admits that he does not know who these "various
subcontractors" are "because I don't think we had an invoice from them." Dkt. No. 147 at ¶ 63.

[3] Again, the Court notes that the AVA Defendants object to this assertion and contend that
they complied with all obligations to produce documents in their possession and control and
further assert that Plaintiff's subpoena requests "'all' bank records of the Defendants, which
amounted to over 5,000 pages of documents, most of which were completely irrelevant to the
claims and defenses in this action." Dkt. No. 147 at ¶ 65.

a Lien Law § 19(4) lien discharge bond in the amount of $661,056.00, with the Tompkins County Clerk, discharging Mid Atlantic's Lien as against the Property. *See id.* at ¶ 77.

## III. DISCUSSION

### A.    Mid Atlantic's Motion to Strike

On August 23, 2017, the AVA Defendants submitted a Declaration of Tom Varish along with their opposition papers to Mid Atlantic's motion for summary judgment. *See* Dkt. No. 147-5. This same document was submitted by the AVA Defendant's in support of their motion for summary judgment. *See* Dkt. No. 140-25. In its opposition to the AVA Defendants' motion for summary judgment, Mid Atlantic argued that this undated declaration was inadmissible. Thereafter, on August 29, 2017, the AVA Defendants submitted a second version of this declaration in their reply papers, which was now dated August 28, 2017. *See* Dkt. No. 149-2. Mid Atlantic objected to the submission of this new declaration because, not only was Tom Varish in default in this action, but he evaded Mid Atlantic's subpoena, despite their diligent efforts to gain his compliance. *See* Dkt. No. 152 at 1-2. The AVA Defendants, however, argued that the request for any relief sought should be denied because the AVA Defendants and their counsel did not exercise any influence or control over Tom Varish. *See* Dkt. No. 153 at 2. Counsel for the AVA Defendants contended that they were not in direct contact with Mr. Varish, and that they simply asked Defendant Patel to forward the declaration that counsel drafted to Mr. Varish for his signature. *See id.*

In an October 25, 2017 Decision and Order, the Court found that consideration of Tom Varish's declaration would be unfairly prejudicial to Plaintiff. *See* Dkt. No. 155 at 4. Specifically, in support of this decision, the Court noted as follows:

Although the AVA Defendants contend that they did not exercise any authority or control over Tom Varish, Defendant Patel was still able to communicate with him and have him sign a declaration in support of his position. While the AVA Defendants attempt to make light of this accomplishment, the signing of that declaration, which is prejudicial to Plaintiff's position, is the only contribution that Tom Varish has made to this litigation to date.

Plaintiff attempted to depose Tom Varish, but its subpoena was ignored. *See* Dkt. No. 148-14. Further, between April 13 and 18, 2017, Plaintiff's counsel attempted to call Mr. Varish sixteen times, both on his mobile phone and office phone. *See* Dkt. No. 148-20. Mr. Varish did not return any of these calls. *See* Dkt. No. 152 at 1-2. Additionally, Plaintiff attempted to reach Mr. Varish through his daughter and current employee, Megan Evans. *See id.* at 2. Ms. Evans was served a subpoena and appeared for a deposition, wherein she confirmed that she currently works in Tom Varish's office, and that she provided him with a copy of the subpoena and spoke with him about the case before attending her deposition. *See id.*; *see also* Dkt. No. 148-15 at 3-5. Further, when Ms. Evans informed Tom Varish that Plaintiff's counsel had been trying to contact him for the past few weeks, Mr. Varish simply responded that "Varish Construction is bankrupt so he has nothing to do with it." Dkt. No. 148-15 at 4.

While the AVA Defendants and their attorneys may not technically have "control" over Tom Varish, Defendant Patel was able to get his signature on the declaration at issue. To permit its use at summary judgment without Plaintiff having an opportunity to depose Mr. Varish would be patently unfair. As such, the Court will reopen discovery for ten (10) days for the limited purpose of deposing Mr. Varish. If the AVA Defendants are unable to produce Mr. Varish for such a deposition, the declaration will be stricken and not considered at summary judgment. *See Plains Pipeline, L.P. v. Great Lakes Dredge & Dock Co.*, 54 F. Supp. 3d 586, 590-91 (E.D. La. 2014) (holding that a declaration that was introduced in reply to the motion for summary judgment of an individual that was not available for deposition and who would remain unavailable through the trial date would be stricken because it would be unfairly prejudicial to the plaintiff). Upon taking Mr. Varish's deposition, the Court will permit the parties to make necessary revisions to their pending motions.

Dkt. No. 155 at 4-5.

On November 3, 2017, counsel for the AVA Defendants filed a letter informing the Court of its attempts to comply with the Court's October 25, 2017 Decision and Order. *See* Dkt. No. 159. The AVA Defendants describe for the Court the efforts they made in attempting to subpoena Tom Varish to appear for a deposition on November 2, 2017, including hiring two different private investigators to serve the subpoena on Varish, having Ajesh Patel call Varish, emailing Varish, and sending him a letter via certified mail. *See id.* at 1-3. Further, the AVA Defendants argue that for almost four years Mid Atlantic made no efforts to subpoena Varish to appear for a deposition. *See id.* at 3. In fact, Mid Atlantic did not attempt to subpoena Varish until April 14, 2017, two weeks before the close of discovery. *See id.* The AVA Defendants note that, after Varish failed to appear for his deposition, Mid Atlantic did not seek leave of Court to extend discovery or ask the Court to find Varish in contempt for failing to appear. *See id.* As such, they argue that the Court should decline to strike the Varish Declaration. *See id.* at 3-4.

In response, Mid Atlantic first argues that since Varish is a defaulting party, he is not entitled to further participate in this action. *See* Dkt. No. 160 at 1 (citing *Garafola v. Ecker Restoration Corp.*, 94 Civ. 7999, 1996 U.S. Dist. LEXIS 7925, *2 (S.D.N.Y. June 10, 1996)). Next, Mid Atlantic notes that, "in a disingenuous attempt to relieve themselves from producing Varish as ordered by this Court, the AVA Defendants lament over their struggles to serve a subpoena upon him within the ten (10) day time period. . . . However, the AVA Defendants' contention that their failure to serve Varish with a subpoena is proof that they do not exert control over him is absurd considering the fact that Varish has a proven track record of replying to defendant Patel's emails in record time to produce not one, but two declarations to bolster their summary judgment papers." *Id.* at 1-2. Moreover, Mid Atlantic contends that the AVA

12

Defendants argument that it sat on its rights to depose Varish has no merit. *See id.* at 2. According to Mid Atlantic, it was not until Defendant Patel's deposition on April 11-12, 2017 and hearing his testimony about the "Varish Certification" that Mid Atlantic learned that Varish's deposition was critical. *See id.* A subpoena was then immediately sent to Varish on or around April 14, 2017, which Varish ignored. *See id.* Mid Atlantic further contends that permitting the AVA Defendants to use the Varish Declaration would be unduly prejudicial and that, contrary to the AVA Defendants' contentions, the record makes clear that Varish was not equally available to all parties in this action. *See id.* at 3.

Mid Atlantic also contends that, contrary to the AVA Defendants' assertions, the Varish Declaration submitted with their reply did introduce new facts not contained in the original certification. *See id.* at 3-4. Among other things, the new declaration includes the following new information: (1) that the Project was interrupted due to an accident and that was the first time Varish learned VCI's insurance did not extend to New York; (2) that Varish agreed to close out his contract with the AVA Defendants since he could not operate as a general contractor in New York anymore as he did not have proper insurance and that VCI allegedly credited the AVA Defendants for the balance of work VCI was unable to complete after January 2013; and (3) that Varish agreed to remain on the site until all VCI's work passed inspection and that the AVA Defendants began to manage and pay all the subcontractors directly. *See id.* at 3-4 (citing Dkt. No. 149-2 at ¶¶ 8-9, 11. Mid Atlantic argues that "the AVA Defendants conveniently overlook the fact that the original purported Varish certification was an unsworn document clearly devoid of legal effect, whereas the subsequent declarations, as amended and eventually sworn to by Varish, go to the very heart of this case, *i.e.*, whether there is any money owed under Varish's contract with the AVA Defendants." *Id.* at 4. Moreover, Mid Atlantic points to

the fact that Defendant Patel admitted at his deposition that he explained to Varish what information he needed to include in the certification and declarations. *See id.*

Having reviewed the parties' submissions[4] and the applicable law, the Court finds that the Varish Declaration shall be stricken and will not be considered as part of the summary judgment record. The March 21, 2013 "Varish Certification" that was produced during discovery and which was submitted with the AVA Defendants' motion for summary judgment is clearly not in admissible form. *See* Dkt. No. 140-25. It is not submitted under penalty of perjury and it is not notarized.

On August 23, 2017, in their response to Plaintiff's motion for summary judgment, the AVA Defendants submitted an undated "Declaration of Thomas Varish" that contains considerably more information than that produced during discovery, including several issues identified above that go directly to the heart of Mid Atlantic's case. *See* Dkt. No. 147-5. Again, however, this declaration is inadmissible because it is undated and was not declared under

---

[4] In its submission, counsel for the AVA Defendants stated the following: "In his letter to the Court on October 17, 2017, Plaintiff's counsel asserts certain facts and conclusions of law that the AVA Defendants were not permitted an opportunity to rebut before the Court issued its October 25, 2017 order. Although the Court's decision states the Court considered the arguments of both parties in reaching its conclusion (Dkt. No. 155, p. 4), neither the Plaintiff nor the Defendants were given the opportunity to brief whether accepting the declaration of Thomas Varish in this case would be unfairly prejudicial to the Plaintiff or whether striking the declaration of Mr. Varish was an appropriate remedy." Dkt. No. 159 at 3. Counsel then proceeds to remind the Court how the Second Circuit "discourages trial courts from issuing *sua sponte* decisions on an issue related to summary judgment without giving the parties notice and an opportunity to be heard." *Id.* (citation omitted). First, the Court notes that its October 25, 2017 Decision and Order was not a "*sua sponte*" decision. It was a decision made in response to Mid Atlantic's letter motion requesting relief from the Court. Second, the Court properly noted that it considered the arguments raised by the parties because, in response to Mid Atlantic's October 17, 2017 letter motion, counsel for the AVA Defendants filed a response that same day. After reviewing the submissions, the Court did not believe that any additional briefing was required and issued its Decision and Order.

penalty of perjury. *See id.* at 3; 28 U.S.C. § 1746. As such, it will not be considered by the Court in deciding the pending motions for summary judgment.

On August 29, 2017, in their reply in further support of their motion for summary judgment, the AVA Defendants finally submitted a version of the Varish Declaration, dated August 28, 2017, that is in admissible form. *See* Dkt. No. 149-2 at 3. Despite finally submitting this information in otherwise admissible form, the Court finds that it must be stricken from the summary judgment record. *See Plains Pipeline, L.P. v. Great Lakes Dredge & Dock Co.*, 54 F. Supp. 3d 586, 590-91 (E.D. La. 2014) (holding that a declaration that was introduced in reply to the motion for summary judgment of an individual that was not available for deposition and who would remain unavailable through the trial date would be stricken because it would be unfairly prejudicial to the plaintiff).

Although the AVA Defendants contend that they did not exercise any authority or control over Varish, the evidence clearly demonstrates that Ajesh Patel was capable of repeatedly having Varish produce different versions of the Varish Declaration so that they could timely be submitted in their response and reply. Further, the record indicates that Defendant Patel was able to communicate with Varish when no others were able to, which, as the Court previously noted, is no small feat.

Additionally, as noted, the Varish Declaration that was not produced during discovery, contains considerably more detail and several allegations that go directly to the heart of Mid Atlantic's case. This new information is primarily only otherwise supported by the testimony of Ajesh Patel.

In *Danjanovich v. Robbins*, No. 2:04-cv-623, 2006 WL 842907 (D. Utah Mar. 27, 2006), the plaintiff moved to strike the affidavit of Scott Alder, who was a named defendant who failed

to attend his deposition.  *See id.* at 3.  The other named defendants had submitted the Alder

affidavit in support of their motion seeking dismissal.  *See id.*  The court granted the plaintiff's

motion to strike pursuant to Rule 37(d) of the Federal Rules of Civil Procedure.  *See id.*

      In *New World Solutions, Inc. v. NameMedia, Inc.*, 150 F. Supp. 3d 287, 305-06

(S.D.N.Y. 2015), the district court granted the defendant's motion to strike the declaration of the

owner of a business that was named as a party.  *See id.* at 306-07.  The court found that this

extreme remedy was appropriate because the business owner failed to appear at his duly noticed

deposition, the business owner's exact whereabouts were unknown, the business owner's

declaration was relevant and prejudicial to the defendant's case, and there was no point in

granting a continuance because the parties had recently filed motions for summary judgment and

it was clear that the business owner would not appear for any scheduled deposition even if

discovery was reopened.  *See id.* at 307-08.  The court further noted that this result was

warranted even in the absence of a finding of bad faith.  *See id.*

      Although the situation in the present matter is slightly unique in that Varish has already

been found in default and his declaration clearly supports the position of other the AVA

Defendants, the Court finds that striking the declaration is nevertheless appropriate.  Mr. Patel

has been able to procure from Varish several statements that are prejudicial to Mid Atlantic's

position, yet Mid Atlantic has been denied any opportunity to depose Varish testing the veracity

of these claims.  Further, as discussed, the only admissible version of the Varish Declaration was

submitted attached to the AVA Defendants' reply in further support of their motion for summary

judgment.

      Finally, the Court notes that the Varish Certification is completely contradicted by VCI's

own verified answer that it filed in a prior related action in New York State Supreme Court,

Tompkins County, captioned *AVA Realty Ithaca, LLC v. Varish Construction, Inc.*, (Index No.: 2013-0946). In that action, the AVA Defendants sought a judgment declaring Mid Atlantic's mechanic's lien null and void on the grounds that they had paid VCI in full prior to the filing of Mid Atlantic's lien – the same defense offered here. *See* Dkt. No. 141-40. In its verified answer in the state court action, VCI denied AVA Realty's allegations that it was paid in full, and specifically alleged the opposite, that "full payment was never made" and that "[AVA Realty] is not entitled to the relief sought and the mechanic's lien should not be vitiated." *Id.* at 8-9.

Based on all of the relevant considerations, the Court grants Mid Atlantic's request to strike the Varish Certification and both versions of the Varish Declaration.

## B.    Summary Judgment Standard

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law. *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted). When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried." *Id.* at 36-37 (quotation and other citation omitted). Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted). Where the non-movant either does not respond

17

to the motion or fails to dispute the movant's statement of material facts, the court must be satisfied that the citations to evidence in the record support the movant's assertions. *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

## C.    Ninth Cause of Action

In their motion for summary judgment, the AVA Defendants first contend that they are entitled to summary judgment on Mid Atlantic's ninth cause of action for foreclosure of the mechanic's lien because VCI was paid in full before the mechanic's lien was filed and because Mid Atlantic willfully exaggerated its lien, rendering it void. *See* Dkt. No. 140-54 at 8-14. In response, Mid Atlantic argues that the record is devoid of evidence that VCI was "paid in full," and the only admissible evidence demonstrates that summary judgment is appropriate for Mid Atlantic, not the AVA Defendants. *See* Dkt. No. 148-1 at 8-17. In support of their position, Mid Atlantic presents the following arguments: (1) the Varish Certification is inadmissible because it is not authenticated; (2) the unsigned version of Pay App. 6 upon which the AVA Defendants rely to show "full payment" is unauthenticated and differs from the signed version that was presented to the Lender; (3) the reliable documentary evidence in the record shows that VCI was not paid in full and that there was a lien fund to which Mid Atlantic's lien attached; and (4) summary judgment should be granted to Mid Atlantic on its lien foreclosure action because there was a lien fund available when it filed its lien. *See id.*

### 1. Payment in Full

Pursuant to New York Law, "a mechanic's lien 'will only attach to those funds due and owing to the general contractor at the time of its filing, or which may thereafter become due and owing.'" *SMI Bldg. Systems, LLC v. West 4th St. Devel. Group, LLC*, 83 A.D.3d 687, 688 (2d Dep't 2011) (quotation and other citations omitted). "[B]ut in either event the lien will not be defeated by the subsequent abandonment of the project by the general contractor even though payments to third parties in excess of the original contract price may be required by the owner to complete the construction." *Bunce v. Fahey*, 73 A.D.2d 632, 632 (2d Dep't 1979) (citations omitted).

In support of their motion for summary judgment, the AVA Defendants contend that VCI agreed in writing to give a credit to AVA Realty in the amount of $3,213,000.00 for work that VCI did not perform. *See* Dkt. No. 140-53 at ¶ 41 (citing Dkt. No. 140-24 at 29). The AVA Defendants rely upon an **unsigned** version of VCI Pay App. 6, which contains a line item for credit change order No. 4 ("CCO 4") in the amount of $3,213,000.00 that purportedly deleted the entire balance of VCI's contract. *See id.*; *see also* Dkt. No. 140-24 at 28-29. As Mid Atlantic correctly notes, however, the version of Pay App. 6 signed by Varish and submitted to both the Lender and ConTech to requisition an advance under the Building Loan contains no reference to CCO 4, much less a credit in the amount of $3,213,000.00. *See* Dkt. No. 148-17; Dkt. No. 141-29 at 101-04.

Additionally, the unsigned version of Pay App. 6 is further called into question by VCI's next payment application, Pay App. 7R, which contains a cumulative list of all of the agreed upon CCOs and which was signed by both Varish and Patel and contains a copy of CCO 4, showing that CCO 4 was in the amount of $23,000.00, not $3,213,000.00. *See* Dkt. No. 141-16

at 5-8; *see also* Dkt. No. 148-18 at 5.  Additionally, Mr. Capotrio testified that if CCO 4 was agreed to between VCI and the owner, then it would be expected to be reflected in the subsequent payment application, *i.e.*, Pay App. 7R.  *See* Dkt. No. 141-17 at 26-27; *see also* Dkt. No. 141-29 at 191 (ConTech report dated April 2, 2013 noting that CCO 4 was in the amount of $23,000).

Additionally, Judith Hartman, VCI's former employee who prepared and signed payment applications on VCI's behalf, was unable to authenticate the unsigned version of VCI Pay App. 6 showing the CCO in the amount of $3,213,000.00.  *See* Dkt. No. 148-5 at 13.  Ms. Hartman testified that it was "odd" and that it "throws a flag up" to her that in the unsigned version of Pay App. 6 no line item number was assigned to CCO 4 in Column A because it was her practice to assign numbers to each line item.  *See id.*

Throughout their motion papers, the AVA Defendants contend that VCI's contract was terminated and that its "account was closed out" and that VCI was terminated as the General Contractor for the Project.  *See* Dkt. No. 140-53 at ¶¶ 41-42.  Questions of fact remain, however, whether this actually occurred and the extent to which VCI's role on the Project actually changed.  For example, the evidence makes clear that, while VCI may have been terminated, Tom Varish and his brother Kevin Varish remained involved with the Project in some capacity.

Further, in Patel's own testimony, he admitted that AVA Realty did not invoke the termination provisions of the VCI contract.  Article 7.1 of the VCI Contract provides that the contract may be terminated as provided under Article 14 of the General Conditions.  *See* Dkt. No. 140-8.  Articles 14.2.1 and 14.2.2 of the General Conditions allow the owner to terminate the contract "for cause" only if one of the conditions enumerated therein exist, and only upon certification of the Initial Decision Maker (the architect) that sufficient cause exists to justify

termination, in which case the owner is required to give "seven days' written notice" prior to termination. *See* Dkt. No. 140-9 at 35-36. Patel admitted in his deposition that the AVA Defendants never sent a notice of termination to VCI, and that he only had a conversation where he informed Varish that he could not continue without insurance. *See* Dkt. No. 140-14 at 45; Dkt. No. 140-15 at 26-27. Patel admitted that he did not give VCI an opportunity to cure the alleged insurance issue by procuring insurance from another company. *See* Dkt. No. 140-15 at 27. Further, Patel admitted that he did not send written notice to any of VCI's subcontractors informing them that VCI's contract had been terminated, that VCI had defaulted, or that VCI was directed to not perform any additional work on the Project. *See id.* at 3-4.

Moreover, questions of fact exist as to the amount of money that was still or may have been due to VCI at the time the lien was filed on March 28, 2013. Based upon Pay App. 7R, there was an outstanding balance due and owing VCI from AVA Realty in the amount of $386,100.00. *See* Dkt. No. 141-16. According to Pay App. 7R, which was VCI's last payment application, the total value of work completed by VCI was $1,718,120.00. *See id.* at 5. However, according to its own admissions, the total amount that the AVA Defendants paid "to Varish or on Varish's behalf" was only $1,172,208. *See* Dkt. No. 141-41 at 8-9. As such, pursuant to these figures, the total value earned and unpaid to VCI was $545,912 at the time Mid Atlantic filed its lien.

Additionally, even though AVA Realty had collected a building loan advance from WSFS on February 8, 2013, in the amount of $386,100 for the "Current Payment Due" for Pay App. 7R, AVA Realty did not pay this amount to VCI. *See* Dkt. No. 141-47 at ¶¶ 33-35. Instead, after collecting the $386,100 under the building loan, the AVA Defendants made only two payments to VCI; a payment of $5,000 on March 7, 2013 and a payment of $7,000 on

March 13, 2013.  *See id.*  Accordingly, there remained a "Current Payment Due" from AVA

Realty to VCI in the amount of $374,11 as of March 28, 2013.  *See id.*

Further, at the time Mid Atlantic Filed its mechanic's lien, there was a retainage balance

in the amount of $171,812 that AVA Realty was withholding based on completed work.  Under

Section 5.1.8 of the VCI contract, the retainage was to be released to VCI "[a]t 50% completion

of the contract value[.]"  Dkt. No. 141-9 at 6.  According to the report of the construction

lender's inspector, ConTech, whose job was to observe and report work progress to WSFS, as of

the construction site visit on April 2, 2013, the "*Percentage of Completion*" was listed as "+/-

*Overall Completion*."  Dkt. No. 141-29 at 192.   As such, the retainage in the amount of

$171,812 represented an amount "which may become due and owing" after Mid Atlantic filed

its mechanic's lien.  *See* N.Y. Lien Law § 4(1).

Additionally, Pay App. 7R shows that there was remaining work in VCI's contract in the

amount of $2,671,880, as shown under Column H, entitled "Balance to Finish."  *See* Dkt. No.

141-16 at 6.  Again, this is an amount that could have come due after the date Mid Atlantic filed

its mechanic's lien.

As noted, there remain considerable discrepancies in the parties' evidence in support of

their respective motions for summary judgment.  These issues involve, among other things, the

amount of money, if any, due to VCI at the time the lien was filed by Mid Atlantic, whether the

contract between VCI and the AVA Defendants was cancelled.  Accordingly, in light of these

questions of fact, the Court denies both Mid Atlantic's and the AVA Defendants' motions for

summary judgment as to the ninth cause of action.

### 2. Exaggeration of the Lien Amount

In their motion, the AVA Defendants contend that Mid Atlantic's mechanic's lien is invalid as a matter of law because Mid Atlantic willfully exaggerated the amount claimed in the lien. *See* Dkt. No. 140-54 at 11-14. The AVA Defendants assert "[i]t is undisputed that Plaintiff did not fully perform under its Subcontract with VCI" and, as to the work it did perform, it was performed in an unworkmanlike manner leading to the failed inspection and subsequent rejection of Mid Atlantic's work by the Project's Architect. *See id.* at 12. As such, the AVA Defendants contend that Mid Atlantic did not provide services anywhere near the value claimed. *See id.* Moreover, the AVA Defendants note that Mid Atlantic claimed in the mechanic's lien that it was only paid $115,000.00 by VCI of the $732,740.00 owed. *See id.* However, the AVA Defendants claim that Mid Atlantic signed release certificates in which it certified that, as of February 8, 2013, it had been paid $421,480.00. *See id.* As such, the AVA Defendants argue that the lien is invalid because of these will exaggerations.

In response, Mid Atlantic first argues that the AVA Defendants are precluded from arguing willful exaggeration because they did not assert such a willful exaggeration counterclaim or affirmative defense in their answer. *See* Dkt. No. 148-1 at 18. Further, Mid Atlantic contends that, even if the Court considers the merits of the defense, it should be rejected because "the AVA Defendants have failed to make even a *prima facie* showing that the lien was inaccurate, much less 'deliberately and intentionally' exaggerated as is required under the Lien Law." *Id.*

### a. Failure to Preserve the Affirmative Defense

"Rule 8(c) of the Federal Rules of Civil Procedure requires that a responsive pleading must set forth certain enumerated affirmative defenses as well as 'any other matter constituting an avoidance or affirmative defense.'" *Saks v. Franklin Covey Co.*, 316 F.3d 337, 350 (2d Cir.

2003) (quoting Fed. R. Civ. P. 8(c)) (other citation omitted).  "An affirmative defense is defined as '[a] defendant's assertion raising new facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all allegations in the complaint are true.'"  *Id.* (quoting Black's Law Dictionary 430 (7th ed. 1999)).

"One of the core purposes of Rule 8(c) is to place the opposing parties on notice that a particular defense will be pursued so as to prevent surprise or unfair prejudice."  *Saks*, 316 F.3d at 350 (citing *Blonder–Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 350, 91 S. Ct. 1434, 28 L. Ed. 2d 788 (1971)).  A general assertion that the plaintiff's complaint fails to state a claim is insufficient to protect the plaintiff from being ambushed with an affirmative defense. *See id.* (citations omitted).

In the present matter, the Court finds that the AVA Defendants failed to raise this affirmative defense in their answer to the second amended complaint (or their previously filed answer) and have waived their right to assert it at this stage of the litigation.  In their reply memorandum of law, the AVA Defendants argue that they have raised this affirmative defense in paragraph 22 of their answer.  *See* Dkt. No. 149 at 8.  Paragraph 22 asserts the following "affirmative defense": "Plaintiff's claims against the undersigned defendants should be dismissed because plaintiff has been paid in part or in full for the value of its services, equipment and materials."  Dkt. No. 83 at ¶ 22.  This "affirmative defense" falls far short of putting Mid Atlantic on notice that the AVA Defendants would be asserting an affirmative defense pursuant to Lien Law § 39.  Although parties are not required to provide citation to the relevant statutory provisions they are relying on when asserting an affirmative defense, the language used must at least provide some indication of the defense they are attempting to assert.  Without providing any reference to willful, fraudulent, intentional, or deliberate exaggeration of the lien amount,

this boilerplate language is insufficient to preserve their right to raise this affirmative defense at the summary judgment stage.

Although the Court notes that it has the discretion to excuse the failure to plead an affirmative defense, excusal here is inappropriate. The language used in the AVA Defendants' affirmative defense was insufficient to prevent surprise and unfair prejudice. Accordingly, the Court finds that the AVA Defendants have failed to preserve their right to raise this defense. As discussed below, however, even when the Court considers the merits of this defense, the AVA Defendants are still not entitled to summary judgment.

### b. Merits of the Affirmative Defense

"A willfully exaggerated lien is void, and the owner or contractor may be entitled to damages from the lienor." *N.Y. Prof. Drywall of OC, Inc. v. Rivergage Devel., LLC*, 137 A.D.3d 1509, 1510 (3d Dep't 2016) (citing N.Y. Lien Law §§ 39, 39-a) (other citations omitted). "The remedy is harsh . . . , and 'the issue of willful and/ or fraudulent exaggeration is . . . one which ordinarily must be determined at . . . trial.'" *Id.* at 1510-11 (internal and other citations omitted). "Where, as here, the relief is sought via summary judgment, the proponent of such relief has the initial burden to 'make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact.'" *Id.* at 1511 (quoting *Alvarez v. Prospect Hosp.*, 68 N.Y.2d 320, 324 (1986) (other citations omitted). The willful exaggeration of a notice of lien has been defined as an exaggeration which is intentional, deliberate, fictitious, or fraudulent. *See Collins v. Peckham Road Corp.*, 18 A.D.2d 860, 861 (3d Dep't 1963) (citations omitted).

It is well settled that a finding of willful exaggeration requires "proof that the lienor deliberately and intentionally exaggerated the lien amount." *Barden & Robeson Corp. v. Czyz*, 245 A.D.2d 599, 601 (3d Dep't 1997) (citation omitted).  "The fact that a lien may contain improper charges does not, in and of itself, establish that a plaintiff willfully exaggerated a lien." *Minelli Const. Co. v. Arben Corp.*, 1 A.D.3d 580, 581 (2d Dep't 2003) (citing *Goodman v. Del-Sa-Co Foods*, 15 N.Y.2d 191 (1965)) (other citation omitted).  An honest mistake as to the amount, which does not amount to willful exaggeration, does not void a mechanic's lien.  *See Goodman*, 15 N.Y.2d at 194 (quotation and other citations omitted).

In the present matter, the Court finds that the AVA Defendants have failed to meet their burden that the exaggerated amount, if any, was willful.  As noted, the determination of willfulness is generally not appropriate at the summary judgment stage.

The payments that the AVA Defendants contend Mid Atlantic certified having received as of a certain date are in dispute as the partial lien waivers upon which they rely all clearly indicate that the lien waiver was "contingent only on receipt of" the sum specified.  *See* Dkt. No. 148 at ¶¶ 106-09, 113.  As to the partial waiver and release of lien dated January 25, 2013, Mid Atlantic does not indicate that Mid Atlantic had been paid $286,480.00 as the AVA Defendants contend.  *See* Dkt. No. 140-6 at 123.  Rather, it indicates that Mid Atlantic had been paid $115,000.00 as of that date and that it will have been paid $286,480.00 upon receipt of the additional sum of $171,480.00.  *See id.*  Mid Atlantic contends that it signed this partial waiver of lien "upon viewing a copy of check for said amount that was emailed to Mid Atlantic, but the actual check was never received."  Dkt. No. 148 at ¶ 109.

As to the argument that the amount of the lien was willfully exaggerated because Mid Atlantic executed partial lien waivers "certifying" that it had received payment in the amount of

26

$421,480.00, the lien waiver clearly dated February 8, 2013, again clearly states that it is contingent upon the actual receipt of payment. *See* Dkt. No. 140-38 at 4. As with the January 25, 2013 waiver and release, Mid Atlantic contends that it never received the amount promised after having been emailed a scan copy of the check. *See* Dkt. No. 148 at ¶ 113. Indeed, an email from Mr. Patel to Tom Varish dated February 8, 2013 shows that, although the bank had released funds to VCI to pay Mid Atlantic around January 25, 2013, Mid Atlantic had not been paid the amount released. *See* Dkt. No. 140-36 at 2-4.

Based on the foregoing, the Court finds that questions of fact preclude granting the AVA Defendants' motion for summary judgment as to the affirmative defense of willful exaggeration pursuant to New York Lien Law § 39.

**D.    Eleventh Cause of Action**

In its eleventh cause of action, Mid Atlantic alleges that AVA Realty and AVA Development aided and abetted VCI and Tom Varish's breach of their fiduciary duties owed to Mid Atlantic as a trustee beneficiary under Article 3-A of the New York Lien Law. *See* Dkt. No. 69 at ¶¶ 107-123. The AVA Defendants contend that they are entitled to summary judgment as to this cause of action because the record is devoid of proof that the AVA Defendants conspired with, or provided substantial assistance to, VCI in connection with VCI's failure to pay trust funds to Mid Atlantic. *See* Dkt. No. 140-54 at 14-18. In support of their position, the AVA Defendants present three general arguments: (1) there was no contractual relationship between AVA Realty and Mid Atlantic; (2) VCI's contract was terminated; and (3) Patel relied on "[Mid Atlantic's] lien release and Ms. Thibideau's email to conclude that VCI paid for the work performed on the Project up until February 8, 2013." *Id.* at 16.

"Article 3-A of the Lien Law creates 'trust funds out of certain construction payments or funds to assure payment of subcontractors, suppliers, architects, engineers, laborers, as well as specified taxes and expenses of construction.'" *Aspro Mech. Contr. v. Fleet Bank*, 1 N.Y.3d 324, 328 (2004) (quotation and other citations omitted); *see also* N.Y. Lien Law §§ 70, 71.  The Court of Appeals has repeatedly recognized that the "primary purpose of article 3-A and its predecessors [is] 'to ensure that "those who have directly expended labor and materials to improve real property [or a public improvement] at the direction of the owner or a general contractor" receive payment for the work actually performed.'" *Id.* (quotation omitted).

"To ensure this end, the Lien Law establishes that designated funds received by owners, contractors and subcontractors in connection with improvements of real property are trust assets and that a trust begins 'when any asset thereof comes into existence, whether or not there shall be at that time any beneficiary of the trust.'" *Aspro Mech. Contr.*, 1 N.Y.3d at 328 (quotation and other citations omitted).  "Funds received by an owner under building loan contracts and building loan mortgages are trust assets and the statute requires owner-trustees to apply such assets for payment of the 'cost of improvement.'" *Id.* at 328-29 (citations omitted).

To set forth a claim for aiding and abetting a breach of fiduciary duty, the plaintiff must establish the following elements: "(1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach, and (3) that plaintiff suffered damage as a result of the breach." *Kaufman v. Cohen*, 307 A.D.2d 113, 125 (1st Dep't 2003) (citing *S & K Sales Co. v Nike, Inc.*, 816 F.2d 843, 847-848 (2d Cir. 1987); *Whitney v Citibank, N.A.*, 782 F.2d 1106, 1115 (2d Cir. 1986); *Wechsler v Bowman*, 285 N.Y. 284, 291 (1941)).

As to the second element, while the plaintiff is not required to establish that the aider and abettor had an intent to harm, there must be evidence that the aider and abettor had actual

knowledge of the breach of fiduciary duty.  *See id.* (citations omitted).  "Constructive knowledge of the breach of fiduciary duty by another is legally insufficient to impose aiding and abetting liability."  *Id.* (citing *Kolbeck v. LIT Am., Inc.*, 939 F. Supp. 240, 246 (S.D.N.Y. 1996)).

In the present matter, the Court first notes that the absence of a contractual relationship between Mid Atlantic and AVA Realty is irrelevant as to this cause of action.  Liability is not premised upon the prime contract.  Rather, it is premised upon liability under the Lien Law, which extends to any person or entity who acts as a "fiduciary manager" with respect to the receipt, disbursement, or administration of trust funds.  Evidence in the record indicates that the AVA Defendants took over responsibility for making payments to VCI's subcontractors.  As Mid Atlantic correctly notes, the duties of the trustee may be transferred to successors or assignees.  *See Aspro Mech. Contr., Inc.*, 1 N.Y.3d at 330.

As to the argument that VCI's contract was terminated, as discussed above, questions of fact remain as to whether VCI was ever actually terminated.  Although Mr. Patel claims as much, other evidence in the record suggests that VCI continued to act as the general contractor throughout the remainder of the Project, including the fact that Mr. Patel failed to abide by the terms of VCI's contract regarding termination for cause.  Additionally, evidence in the record suggests that VCI's subcontractors continued to present invoices to VCI through January 2014 and that the invoices were paid by AVA Realty from the proceeds of the building loan.  *See, e.g.*, Dkt. No. 141-29 at 260 (invoice from Manning Materials dated May 20, 2013 sent to VCI).  Moreover, the ConTech Reports indicate that, through May 23, 2013, VCI was still the "builder" of the Project.  *See, e.g.*, Dkt. No. 141-29 at 250 (Construction Monitoring Report #11 dated May 23, 2013 listing "Varish Construction, Inc." as the "Builder" and "AVA Realty Ithaca" as the "Borrower").

Finally, as to the assertion that the AVA Defendants relied on "[Mid Atlantic's] lien release and Ms. Thibideau's email to conclude that VCI paid for the work performed on the Project up until February 8, 2013," the Court finds that the evidence relied upon either does not support the assertion or is contradicted by other evidence in the record.  On February 7, 2013, Phil Capotrio emailed VCI questioning the accounting on Mid Atlantic's lien release. Specifically, Mr. Capotrio wrote:

> Tom,
>
> I was reviewing the lien release for Mid-Atlantic and the numbers do not seem to be matching up and I could use some clarity.
>
> To date, we have advanced $420,000.00 in funds to pay building shell and labor and the lien release only states that they have been paid $286,480.  Also the release states that VCI has been billed $696,990 and they have only been paid $286,480.

*See* Dkt. No. 140-36 at 3.  The following day, Mr. Patel emailed Tom Varish to question him about the whereabouts of the $420,000.00 in funds paid to VCI toward the supply and erection of the building shell, which was part of Mid Atlantic's work.  *See id.* at 2-3.  There is no indication whether Varish ever responded to the email.  The AVA Defendants contend, however, that "[s]oon after Mr. Patel's e-mail to Tom Varish, Plaintiff's Comptroller (Doreen Thibedeau) e-mailed Mr. Patel an executed lien release certifying that Plaintiff had been paid $421,480.00." Dkt. No. 140-54 at 16.  Ms. Thibedeau also wrote to Mr. Patel that "'I will let you know that I have seen a copy of a check for $171,480.00 that is more than likely in route to us ck #3343.'"  *Id.* (quoting Dkt. No. 140-47 at 2).

Contrary to the AVA Defendants assertions, the email makes clear that Mid Atlantic had not yet received the check for $171,480.00.  Rather, she had only seen a copy of the check and Ms. Thibedeau assumed that it was in the mail.  Moreover, as discussed above, the lien waivers

30

clearly indicate that they were being provided in advance of payment and that they were expressly contingent upon receiving that payment.

Further, it is undisputed that five days later on February 13, 2013, Mr. Patel received a letter from Mid Atlantic's attorney, which clearly states that Mid Atlantic had only received one payment for $115,000.00 and that there was a balance of $600,960.00 that remained unpaid. *See* Dkt. No. 141-15 at 3. That same day Mr. Patel also received an email from VCI forwarding an email from Mid Atlantic's parent company, UFPI, which also claimed that there was a balance due of $600,960.00. *See* Dkt. No. 141-39 at 2. Upon receiving this email, Mr. Patel forwarded it to the Lender with the following message: "See below. I will not pay it. [T]he work is not done. They delayed me. [T]heir contract is with Tom not me." *Id.* According to Mid Atlantic, this makes clear that Patel had already made up his mind that he would not pay Mid Atlantic, even though it was still working on the Project. *See* Dkt. No. 148-1 at 25.

Considering the material facts in dispute, summary judgment must be denied. The evidence before the Court demonstrates that there are questions of fact as to the extent of the transfer of responsibility from VCI to the AVA Defendants. There is little upon which the parties can agree, including whether Mid Atlantic completed work on the Project, the date on which Mid Atlantic ceased working on the Project, whether VCI was ever actually terminated as general contractor, and whether VCI received and/or returned funds to the AVA Defendants upon the alleged termination.[5] While the AVA Defendants are correct that Mr. Patel

---

[5] The Court has serious concerns regarding the AVA Defendants' repeatedly assertions that they did not have a contract with Mid Atlantic and that they had no obligation to make payments to Mid Atlantic even after the alleged termination of VCI. While the AVA Defendants contend that they fired the general contractor (VCI) and took over the responsibilities of the general contractor, including paying subcontractors for work completed on the Project, Mid

(continued...)

"confronted Defendant Varish about the whereabouts of the money paid to VCI for the building shell," Mr. Patel also asserted that he would not pay any of the money owed once he was informed that Mid Atlantic was claiming that they had yet to be paid and they further allege that VCI credited them a substantial sum of money when VCI was allegedly terminated as the general contractor.  The record is replete with contradictory allegations and evidence that must be decided at trial.

Accordingly, the Court denies the parties' motions for summary judgment as to Mid Atlantic's eleventh cause of action.

## E.  Twelfth and Fourteenth Causes of Action

Mid Atlantic's twelfth and fourteenth causes of action asserts claims against AVA Realty and Ajesh Patel for breach of fiduciary duty owed to Mid Atlantic, a beneficiary of a trust fund, and diversion and/or misappropriation of trust funds under Article 3-A of the New York Lien Law.  *See* Dkt. No. 69 at ¶¶ 124-132, 138-151.  The AVA Defendants contend that these claims should be dismissed because AVA Realty and Ajesh Patel did not owe a duty to Mid Atlantic and because Mid Atlantic cannot show that AVA Realty and/or Ajesh Patel diverted or misappropriated any funds due to it.  *See* Dkt. No. 140-54 at 18-23.

### 1. Duty Owed to Mid Atlantic

"Under New York law, the elements of a claim for breach of fiduciary duty are: '(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting

---

[5](...continued)
Atlantic appears to be the only subcontractor excluded from these new obligations for the AVA Defendants.

therefrom.'" *Schwartzco Enters. LLC v. TMH Mgmt., LLC*, 60 F. Supp. 3d 331, 352 (E.D.N.Y. 2014) (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011)).

Section 71(3) of the Lien Law provides, "[w]ith respect to the trust of which an owner is trustee, 'trust claims' means claims of contractors, subcontractors, architects, engineers, surveyors, laborers and materialmen arising out of the improvement, for which the owner is obligated, and also means any obligation of the owner incurred in connection with the improvement for a payment or expenditure defined as cost of improvement." N.Y. Lien Law § 71(3)(a). "A trust of which an owner is trustee continues with respect to every asset of the trust until every trust claim arising at any time during the improvement has been paid or discharged, or until all such assets have been applied for the purposes of the trust." *Arbor Realty Funding, LLC v. East 51st St. Dev. Co.*, 2009 NY Slip Op 52696, *7-*8 (Sup. Ct., N.Y. Cty. 2009 (citing N.Y. Lien Law § 72(1)). Under Lien Law §71(4), "[p]ersons having claims for payment of amounts for which the trustee is authorized to use trust assets as provided in this section are beneficiaries of the trust whether or not they have filed or had the right to file a notice of lien…. Where an owner becomes obligated to incur an expenditure as part of the cost of improvement, any person to whom he is so obligated is a beneficiary." N.Y. Lien Law § 71(4).

Based on this authority, courts have held that a subcontractor was a beneficiary of the owner's trust, and had a legally sufficient cause of action against the owner for misappropriation of trust funds under Article 3-A of the Lien Law. *See Martirano Constr. Corp. v. Briar Contr. Corp.*, 104 A.D.2d 1028, 1030-31 (2d Dep't 1984). Similarly, in *Radory Constr. Copr. v. Arronbee Constr. Corp.*, 24 A.D.2d 573 (2d Dep't 1965), the court held that the petition, a subcontractor, was "a beneficiary having a trust claim on the proceeds of the building loan agreement, even though petitioner's work had been completed at the time the building loan

agreement was made . . . [and] despite the fact that the petitioner's mechanic's lien was bonded." *Id.* at 573.

Based on this authority, the Court finds that, pursuant to Section 71(3) of the New York Lien Law, Mid Atlantic, as a subcontractor and lienor, is a beneficiary of the owner-trust and, therefore, Mid Atlantic had a fiduciary duty to Mid Atlantic.

As to Mr. Patel, as explained above, AVA Realty, acting through Mr. Patel, its only employee, stepped into the shoes of VCI for purposes of disbursing payments to VCI's subcontractors. It is well settled that "an individual officer of a corporate trustee may be held personally liable for breach of a Lien Law trust" to the extent that the officer is "found to have participated in or known about the use of trust funds for non-trust purposes." *In re Waldron*, No. 13-12190, 2015 WL 6734481, *6 (Bankr. N.D.N.Y. Nov. 3, 2015) (citing cases).

Based on the foregoing, the Court finds that the AVA Defendants are not entitled to summary judgment on this ground.

### 2. Breach of Fiduciary Duty

Contrary to the AVA Defendants' contentions, the Court finds that questions of fact exist that preclude granting summary judgment on this claim. As noted above, the AVA Defendants never produced a copy of either version of the February 12, 2013 Amendment Letter, or any emails relating to these letters and agreements, in which the AVA Defendants took over responsibility for paying subcontractors from VCI. Rather, the two versions of the Amendment Letters were produced by WSFS in response to a subpoena in this case. To date, however, neither Exhibit A or B referenced in those letters have been produced.

There is no dispute that the AVA Defendants had control of the missing documents and failed to produce them, even though they were obligated to do so in response to Mid Atlantic's

discovery demands.  The emails produced by WSFS show that Mr. Patel had emailed the

Payment Request Letter to VCI, yet Mr. Patel did not produce this document.  *See* Dkt. No. 141-

24.  These documents go to the very heart of the payment issues in this case since Mr. Patel has

taken the position that VCI never directed him to pay Mid Atlantic and the missing Exhibit A to

VCI's Payment Request Letter which "lists the payments to be made and to whom" would have

been significant for determining whether Mid Atlantic was listed as a payee.  As Mid Atlantic

notes, if it was listed as a payee, the AVA Defendants would have no defense for not disbursing

the funds to Mid Atlantic.

     Similarly, the missing Exhibit B is also potentially relevant and prejudicial to the AVA

Defendants' position that VCI was not owed any money because the cost to complete its work

exceeded VCI's contract balance, and, therefore, there was no "lien fund."  In this letter, the

parties agreed that "all sub-contractor, vendor, [Varish] labor or other bills shall not exceed the

monies available to complete the Project, per the revised schedule of values, attached hereto as

Exhibit B."  Certainly, this revised schedule would likely permit the Court to determine the

amount that VCI and the AVA Defendants had allocated for the completion of the Project.

     In support of its motion, Mid Atlantic contends that, based on the AVA Defendants

failure to produce this evidence, the Court should draw an adverse inference against the AVA

Defendants.  *See* Dkt. No. 141-48 at 18-19.  Specifically, Mid Atlantic argues that "the Court

should infer that, based on the AVA Defendants' willful failure to produce a copy of the exhibits

referenced in the Payment Request Letter and the Amendment Letter that these documents

would have supported Mid Atlantic's case.  Specifically, 'Exhibit A' to the Payment Request

Letter would have listed a payment to Mid Atlantic for $175,000 earmarked in Pay App. 7R for

Line Item 6 (Building-shell) and $50,000 for [L]ine [I]tem 30 (Labor-Framing)."  *Id.* at 19

(citing Dkt. No. 141-16; Dkt. No. 141-21). Further, Mid Atlantic asserts that the Court should infer that "the 'revised schedule of values' attached as 'Exhibit B' to the Amendment Letter would have shown that there was money allocated for payment to Mid Atlantic for Line Items 6 and 30." *Id.*

Adverse inferences are appropriate where "(1) relevant evidence is destroyed; (2) with culpability; (3) when the defendant was under a duty to preserve the evidence." *Burgos v. Satiety, Inc.*, No. 10-cv-2680, 2013 WL 801729, *6 (E.D.N.Y. Mar. 5, 2013) (citations omitted); *see also Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107-08 (2d Cir. 2002) (discussing the requirements for adverse inferences); *Curcio v. Roosevelt Union Free Sch. Dist.*, 283 F.R.D. 102, 108 (E.D.N.Y. 2012) (same); *Valenti v. Penn Mut. Life Ins. Co.*, 850 F. Supp. 2d 445, 452 (S.D.N.Y. 2012) (same). Granting a dispositive motion based on an adverse inference is an extreme remedy and should be used sparingly. *See Dahoda v. John Deere Co.*, 216 Fed. Appx. 124, 125 (2d Cir. 2007); *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999); *Arista Records LLC v. Usenet.com, Inc.*, 608 F. Supp. 2d 409, 442 (S.D.N.Y. 2009). It can be appropriate when bad faith and willfulness is demonstrated and there is no other remedy available. *See Dahoda*, 216 Fed. Appx. at 125 (citation omitted).

In the present matter, the Court finds it inappropriate to grant Mid Atlantic's motion for summary judgment based on an adverse inference. Questions exist as to the culpability of Mr. Patel in failing to produce this evidence. Further, lesser sanctions exist that would cure the potential prejudice to Mid Atlantic, such as instructing the jury that they are entitled to draw an adverse inference against the AVA Defendants based on their failure to produce and/or preserve this evidence. *See Dahoda*, 216 Fed. Appx. at 126 (finding that the district court erred in granting a motion for summary judgment based on spoliation of evidence when other lesser

sanctions were available, including an adverse inference charge). Because the evidence before the Court fails to otherwise demonstrate what amount, if any, Mid Atlantic was owed at the time when AVA Realty/Patel became fiduciaries of the trust funds, summary judgment is inappropriate at this time.

Accordingly, the Court denies the parties' motions for summary judgment as to the twelfth and fourteenth causes of action.

**F.    Thirteenth Cause of Action**

In its thirteenth cause of action, Mid Atlantic seeks an accounting of trust funds. *See* Dkt. No. 69 at ¶¶ 133-37. In their motion for summary judgment, the AVA Defendants contend that this claim fails as a matter of law "[s]ince AVA Realty did not owe a fiduciary duty to the Plaintiff under Article 3-A, it also did not owe a duty to account for the trust fund[ ] assets in possession of VCI." Dkt. No. 140-54 at 24.

Having found that AVA Realty owed Mid Atlantic a fiduciary duty once it took over the responsibility for paying VCI's subcontractors, the AVA Defendants' motion for summary judgment is denied.

In Mid Atlantic's motion for summary judgment, it asserts in its conclusion that it is entitled to summary judgment on its thirteenth cause of action seeking an accounting. *See* Dkt. No. 141-48 at 30. Mid Atlantic fails to specifically address this cause of action at any point in its discussion. Accordingly, the Court declines to grant Mid Atlantic's motion for summary judgment as to the thirteenth cause of action.

**G.    Fifteenth Cause of Action**

In its fifteenth cause of action, Mid Atlantic asserts a claim for fraudulent conveyance under Sections 274 and 276 of the New York Debtor and Creditor Law, claiming that the AVA Defendants and Patel conveyed the Property to 359 Hospitality without fair consideration, which left the AVA Defendants with unreasonably small capital to conduct its business and satisfy its debts. *See* Dkt. No. 69 at ¶¶ 152-164. The AVA Defendants contend that this claim should be dismissed because it is based on a typographical error. *See* Dkt. No. 140-54 at 24. Specifically, the AVA Defendants claim that this cause of action is premised on Mid Atlantic's mistaken belief that AVA Realty sold the Property to 359 Hospitality for "only $772,000." *Id.* They contend that "[t]here is no evidence in the record to suggest that AVA Realty sold the property to 359 Hospitality for $772,000, except for the Tompkins County Clerk Recording Page of the Warranty Deed, [Exhibit F], showing that the transfer amount for the property was $772,500.00." *Id.*

New York's Debtor and Creditor Law ("DCL") "identifies several situations involving 'constructive fraud,' in which a transfer made without fair consideration constitutes a fraudulent conveyance, regardless of the intent of the transferor." *In re Sharp Intern. Corp.*, 403 F.3d 43, 53 (2d Cir. 2005) (quotation omitted). "Under the DCL, a conveyance by a debtor is deemed constructively fraudulent if it is made without 'fair consideration,' and (*inter alia*) if one of the following conditions is met: (i) the transferor is insolvent or will be rendered insolvent by the transfer in question, DCL § 273; (ii) the transferor is engaged in or is about to engage in a business transaction for which its remaining property constitutes unreasonably small capital, DCL § 274; or (iii) the transferor believes that it will incur debt beyond its ability to pay, DCL § 275." *Id.*

In the present matter, the Court finds that the AVA Defendants' motion for summary

judgment must be denied.  The Lender's records show that the appraised value of the property

was $17,100,000.00 and Mr. Patel acknowledged that, after the transfer of title to the hotel

property to 359 Hospitality, AVA Realty had no assets and no longer engaged in any business

other than defending this litigation.  *See* Dkt. No. 148-19 at 2; Dkt. No. 141-7 at 12-13.  Further,

Mr. Patel owns and controls both AVA Realty and 359 Hospitality.  As such, the Court finds

that questions of fact exist as to whether the consideration was fair, whether AVA Realty was

rendered insolvent, and whether the transfer left AVA Realty with unreasonably little capital.

## H.    Sixteenth Cause of Action

In its sixteenth cause of action, Mid Atlantic asserts a claim for collusive conveyance.  In

their motion for summary judgment, the AVA Defendants contend that this claim should be

dismissed because AVA Realty "took all the steps necessary to ensure that, if Plaintiff's

mechanic's lien was valid, that Plaintiff would be paid out of the contingency fund created for

that purpose."  Dkt. No. 140-54 at 27.

Section 7 of New York's Lien Law states as follows:

> Any payment by the owner, contractor or subcontractor upon a
> contract for the improvement of real property, made prior to the
> time when, by the terms of the contract, such payment becomes
> due, for the purpose of avoiding the provisions of this article, shall
> be of no effect as against the lien of a subcontractor, laborer, or
> materialman under such contract, created before such payment
> actually becomes due.  A conveyance, mortgage, lien or
> incumbrance made by an owner of real property, for the purpose of
> avoiding the provisions of this article, with the knowledge or
> privity of the person to whom the conveyance is made or in whose
> favor the mortgage, lien or incumbrance is created, shall be void
> and of no effect as against a claim on account of the improvement
> of such real property, existing at the time of the making of the
> conveyance or the creation of such mortgage, lien or incumbrance.

N.Y. Lien Law § 7.

As Mid Atlantic correctly contends, questions of fact preclude summary judgment as to this claim. The conveyance of title from AVA Realty to 359 Hospitality, followed by 359 Hospitality's making of a mortgage on the Property in the amount of $11,000,000.00, raises questions of fact as to whether the transfer of title and mortgage was made for the purpose of evading Mid Atlantic's lien, as alleged in the complaint. Moreover, as to the AVA Defendants' claim that they took steps to ensure that if Mid Atlantic's lien is valid it would be paid from a "contingency fund," there is no evidence showing that such a fund, if created, is still in existence. *See* Dkt. No. 148 at ¶ 132.

Accordingly, the Court denies the AVA Defendants' motion seeking dismissal of Mid Atlantic's sixteenth cause of action.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Mid Atlantic's request to strike the Varish Certification and both Varish Declarations is **GRANTED**; and the Court further

**ORDERS** that the parties' letter motions seeking to further address Mid Atlantic's request is strike (Dkt. Nos. 159 & 160) are **DENIED** as moot; and the Court further

**ORDERS** that the parties' cross-motions for summary judgment (Dkt. Nos. 140 & 141) are **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 29, 2018
       Albany, New York

Mae A. D'Agostino
U.S. District Judge

41